Karen W. STROUD (Miller), Plaintiff
and Respondent,

v.

James M. STROUD, Defendant
and Appellant.

No. 860049–CA.

Court of Appeals of Utah.

June 17, 1987.

David S. Dolowitz, Parsons, Behle & Latimer, Salt Lake City, for defendant and appellant.

Mikel M. Boley, Blackham & Boley, Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and
GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Defendant appeals an order of the Third District Court refusing to stay the accrual of interest on a judgment for delinquent child support payments. We affirm.

Plaintiff Karen W. Stroud and defendant James M. Stroud were divorced on June 20, 1972. The decree granted plaintiff care, custody, and control of the couple's two minor children. The decree also ordered defendant to pay child support of $75.00 per child per month. On September 20, 1983, the trial court issued an order to show cause why judgment should not be entered against defendant for past due child support. At a hearing on March 6, 1984, the trial court found in favor of plaintiff and ordered defendant to pay her $18,-815.00 in principal and interest plus attorney fees and court costs, with interest on the unpaid balance to accrue at 12% per annum until paid. The court issued its findings, conclusions, and order on March 15, 1984.

Defendant filed a motion to amend the judgment on June 8, 1984. Defendant asked the court to stay execution of the judgment provided defendant make payments of $300.00 per month.[1] Defendant also requested the court to prohibit the accrual of interest on the unpaid judgment provided he remain current on his payments. In an order issued July 19, 1984, the court granted defendant's motion to stay execution of the judgment provided payments were made. However, the court concluded, under Utah Code Ann. § 15–1–4 (1986), it could not waive the interest on a judgment. Defendant filed a notice of appeal on July 31, 1984.

On appeal, defendant contends Utah Code Ann. § 30–3–5(1) (1979) grants a trial

---

1. Initially, defendant would pay $150.00 per month child support and $150.00 per month on the judgment. In February, 1985, the older child would reach majority and the child support payment would decrease to $75.00 while the judgment payment would increase to $225.00.

court the authority to suspend interest payments when such action is determined to be equitable. Therefore, argues defendant, the trial court erred in ruling it had no power to stay the accrual of interest.

Section 15–1–4 provides that, unless otherwise specified by contract, "judgments *shall* bear interest at the rate of 12% per annum." (Emphasis added.) Defendant suggests where equity requires, this statute may be ignored under section 30–3–5(1) (1979) which states, "When a decree of divorce is rendered, the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable...."[2] Defendant cites *Harmon v. Harmon*, 26 Utah 2d 436, 491 P.2d 231 (1971), and *Pope v. Pope*, 589 P.2d 752 (Utah 1978), in support of his argument.

In *Harmon*, the Utah Supreme Court upheld a trial court's stay of execution on a judgment for support arrearages using the following rationale:

In order to carry out the important responsibility of safeguarding the interests and welfare of children, it has always been deemed that the courts have broad equitable powers. To accept the plaintiff's contention that an adjudged arrearage is tantamount to a judgment in law, would in the long run tend to impair rather than to enhance the abilities of both the plaintiff and the court to accomplish the desired objective. Such a judgment at law does not have the valuable and useful attribute which allows its enforcement by contempt measures. For the foregoing reasons decrees and orders in divorce proceedings are of a different and higher character than judgments in suits of law; and by their nature are better suited to the purpose of protecting the interests and welfare of children.... [W]here it appears to be in the furtherance of the court's responsibility of safeguarding the welfare of children, the District Court may upon conditions which he deems appropriate and consistent with that objective, make an order such as the one here under attack, staying the issuance of execution.

*Harmon*, 491 P.2d at 232, 233. In the instant case, the trial court appropriately exercised its discretion and stayed execution of the judgment.

In *Pope*, the trial court, in dividing the marital property, ordered defendant to pay plaintiff $24,984.00. Apparently in order to induce defendant to pay the money within six months, the court ordered that if the amount remained unpaid after the six month period, then interest would increase from the then statutory rate of eight percent to ten percent. The Utah Supreme Court affirmed the trial court's order and held, "Sec. 15–1–4, which requires ... judgments to bear interest at the rate of eight percent per year, does not preclude a District Court, under Sec. 30–3–5 from imposing an interest rate of more than eight percent where, under the circumstances, that award is reasonable and equitable." 589 P.2d at 754.

Defendant claims the breadth of discretion exercised by the trial court in *Harmon* and *Pope* and affirmed by the Supreme Court is similar to the discretion the trial court in this case claimed it did not have. Defendant argues that, if, under *Pope*, the trial court has the discretion to raise the interest rate on a judgment in a divorce decree, the court also has the discretion to stay the accrual of interest on the judgment.

This approach is contrary to law. Section 15–1–4 states judgments "shall" bear the statutory rate of interest. According to the Utah Supreme Court, the meaning of the word shall is usually or ordinarily presumed to be mandatory. *Herr v. Salt Lake County*, 525 P.2d 728 (Utah 1974); *State v. Zeimer*, 10 Utah 2d 45, 347 P.2d 1111 (1960). Section 15–1–4 is a very specific statute while section 30–3–5(1) is much more general. "When two statutory provisions appear to conflict, the more specific provision will govern over the more general

---

**2.** In 1985, this section was amended to read, "When a decree of divorce is rendered, the court may include in it equitable orders relating to the children, property, and parties...." The amendments have no effect on the issue raised in the present case.

provision." *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 216 (Utah 1984).

Furthermore, when principles of equity confront rules of law, "equity follows the law." *McDermott v. McDermott*, 129 Ariz. 76, 628 P.2d 959, 960 (App.1981). The Court of Appeals of Arizona states, "... courts of equity are as much bound by plain and positive provisions of statute as are courts of law and where rights are clearly established and defined by statute, equity has no power to change or upset such rights." *Stokes v. Stokes*, 143 Ariz. 590, 694 P.2d 1204, 1208 (App.1984).

The Utah Supreme Court has held one who obtains a judgment for unpaid maintenance and support is *entitled* to interest thereon until paid. In *Scott v. Scott*, 19 Utah 2d 267, 430 P.2d 580 (1967), the trial court awarded a judgment for unpaid alimony under a Nevada divorce decree. The Supreme Court affirmed the judgment, and, in response to defendant's request to modify the accrued installments, held, "The right to such accrued installment payments vested in the plaintiff upon the due date of each installment, and *the plaintiff is entitled to interest thereon at the legal rate until payment is made.*" *Id.* at 272, 430 P.2d at 583. (Emphasis added.) See also *McKay v. McKay*, 13 Utah 2d 187, 370 P.2d 358 (1962); *Larsen v. Larsen*, 9 Utah 2d 160, 340 P.2d 421 (1959); *Cole v. Cole*, 101 Utah 355, 122 P.2d 201 (1942).

The general rule that a spouse is entitled to interest on a judgment for support arrearages until paid is followed in several other jurisdictions. *Jarvis v. Jarvis*, 27 Ariz.App. 266, 553 P.2d 1251 (1976); *In re Marriage of Popenhager*, 99 Cal.App.3d 514, 160 Cal.Rptr. 379 (1979); *In re Marriage of Schutte*, 721 P.2d 160 (Colo.App. 1986); *Strand v. Despain*, 79 Idaho 304, 316 P.2d 262 (1957); *Chaudoir v. Chaudoir*, 430 So.2d 280 (La.App.1983); *Rubisoff v. Rubisoff*, 242 Miss. 225, 133 So.2d 534 (1961); *Gardner v. Gardner*, 253 S.C. 296, 170 S.E.2d 372 (1969). The Colorado Court of Appeals specifically held, under a

statute similar to section 15-1-4, "... the trial court is without discretion to deny interest." *Schutte*, 721 P.2d at 162. *See also Popenhager*, 160 Cal.Rptr. at 384.

We hold a judgment for child support arrearages is a judgment under section 15–1–4.[3] The custodial spouse is entitled to the statutory rate of interest on the judgment until payment in full. Although the trial court may, in its discretion under section 30–3–5, raise the statutory interest if equity so requires, the court does not have the discretion to lower, stay, or waive interest.

The judgment of the trial court is affirmed.

GARFF, J., concurs.

GREENWOOD, Judge (dissenting):

I respectfully dissent from the majority opinion. The Utah Supreme Court's holding in *Pope v. Pope*, 589 P.2d 752 (Utah 1978), I believe, mandates a decision that in divorce proceedings a trial court judge may, as a matter of law, bar the accrual of interest or decrease the rate of interest from that statutorily established on a judgment if the equities in a divorce proceeding justify such action.

As pointed out in the majority opinion, *Pope* upheld the power of the judge to require payment of interest at a rate higher than that statutorily imposed, if the judgment debtor failed to pay the judgment for child support arrearages within a specified time. Similarly in this case, appellant wished to argue for an abatement of interest accrual if he made payments on the judgment as agreed. Both involved only prospective interest accrual, and would provide an incentive to the debtor to make payments as ordered by the court.

The majority contends that the statutory interest is mandatory, first, because the word "shall" in Utah Code Ann. § 15-1-4 (1986) eliminates the possibility of any discretion, and second, because the general

---

**3.** Our decision falls squarely within the spirit and intent of newly enacted Utah Code Ann. § 30–3–10.6(1)(a) (1987): "Each payment or installment of child or spousal support under any child support order ... is, on and after the date it is due: (a) a judgment with the same attributes and effect of any judgment of a district court...."

652

provisions of Utah Code Ann. § 30–3–5(1) must be governed by the more specific provisions of § 15–1–4. However, *Pope* deviates from the statutory rate despite the conflict between the two statutes and the compulsory "must" in § 15–1–4. In fact, *Pope*, in effect, establishes that § 30–3–5(1) controls § 15–1–4, contrary to the majority opinion. As stated in *Pope*, "Sec. 15–1–4, which requires ... judgments to bear interest at the rate of eight percent per year, does not preclude a District Court, under Sec. 30–3–5 from imposing an interest rate of more than eight percent where, under the circumstances, that award is reasonable and equitable." *Id.* at 754.

Furthermore, consistent with *Pope*, the trial judge in domestic matters should have considerable latitude in exercising the court's discretion and equitable powers to fashion remedies which best serve not only the parties, but, more importantly, the children of the parties. It is certainly conceivable that the court could reason that a delinquent support obligor would be more likely to pay such a judgment with an abatement or suppression of interest that would allow for an eventual satisfaction of the judgment. As a matter of policy, this may be preferable to no payments at all. The trial judge is in the best position to determine the method most likely to actually produce support payments.

To try to distinguish *Pope* and allow higher, but not lower than the statutory interest rate violates principals of fairness and evenhandedness. It would be more consistent to overrule *Pope*. However, given the precedent of *Pope*, I believe this Court should reverse and hold that in divorce cases the court may prospectively reduce or suspend interest accrual on judgments for delinquent child support, as a legitimate exercise of the equitable powers of the court.